RICHARD T. GREEN & another, trustees, *vs.* CITY OF EVERETT.

Middlesex.   January 8, 1901. — May 24, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Municipal Corporations*, Powers of City Council of Everett. *Land Damages*, Evidence of value.

Section 23 of the charter of Everett, St. 1892, c. 355, gives the city council of that city the power to lay out and widen streets. *Semble*, that under this power the city council, in taking land to widen a street, could by a vote accepting a proposal in writing make an agreement under St. 1884, c. 226, with the owner of land taken, that the city should abate the betterments to be assessed upon the remainder of such owner's land upon a reduction of his claim for damages for land taken, notwithstanding §§ 21, 26 and 33 of the charter providing, that the city council shall take no part in the executive business of the city, that all the

executive powers of the city shall be vested in the mayor, and that no liability shall be incurred by or in behalf of the city until the city council has voted an appropriation sufficient to meet it. These provisions were passed *alio intuitu* and do not limit the powers of the city council to lay out, alter or widen ways under general laws.

Under the charter of Everett, St. 1892, c. 855, the city council has no power to make an agreement of settlement of a pending petition for damages for land taken to widen a street under the betterment acts, where at the time of the taking no agreement was made under St. 1884, c. 226, and therefore a vote of the city council accepting a proposal of such an agreement of settlement is void and cannot be put in evidence by a petitioner for damages to show the value of his land taken for the widening.

Upon a petition for damages for land taken to widen a street under the betterment acts, the petitioner cannot show the amount of the betterments assessed upon his remaining land, the increase in value from the widening having no bearing on the value of the petitioner's land before the taking.

PETITION against the city of Everett for an assessment, under the provisions of Pub. Sts. c. 51, of the damages sustained by the petitioners by the widening of Ferry Street in Everett, and the taking of certain portions of their land for that purpose, filed August 31, 1898.

At the trial in the Superior Court, before *Hardy*, J., it appeared, that the petitioners were the owners of three large tracts of land at the junction of Broadway and Ferry Street in Everett, consisting of the westerly, northerly and easterly corners. The taking was made September 21, 1897, pursuant to the betterment acts.

The petitioners' evidence tended to show that the damages sustained by the taking of the land and buildings, and consequent damage to the remaining land, amounted to $12,000 or more. The respondent's evidence tended to show that the damages amounted to $7,000 or less.

The petitioners offered to show by evidence, to the form of which no objection was taken, that on April 25, 1899, the city council of Everett accepted a proposal of the petitioners to settle their claim against the city for the takings for the sum of $7,800, with an agreement to abate the betterments then to be assessed upon their property, and that this agreement was passed over the mayor's veto by the board of aldermen May 8, 1899, and by the common council June 13, 1899; that the petitioners had been willing and offered to settle according to this agreement, but that the city government had neglected

and refused to make the appropriation necessary to carry it into effect. This evidence was excluded, and the petitioners excepted.

The petitioners offered to show by evidence, to the form of which no objection was taken, that on September 18, 1899, betterments to the amount of $4,232.04 were assessed upon the petitioners' land. Upon the respondent's objection this evidence was excluded, and the petitioners excepted.

The jury returned a verdict for the petitioners in the sum of $7,599.90; and the petitioners alleged exceptions.

St. 1892, c. 355, is the charter of the city of Everett. The material sections are as follows:

" Section 23. The city council shall, subject always to the approval of the mayor, have exclusive authority and power to order the laying out, locating anew and discontinuing of and the making of specific repairs in all streets and ways and all highways within the limits of the city; to assess the damages sustained thereby by any person and, except as herein otherwise provided, to act in matters relating to such laying out, locating anew, altering, discontinuing or repairing, but in all such matters action shall first be taken by the board of aldermen. Any person aggrieved by the action of the city council hereunder shall have all the rights and privileges now by law in similar cases allowed in appeals from decisions of selectmen."

" Section 21. Neither the city council nor either branch thereof, nor any committee or member thereof, shall directly or indirectly take part in the employment of labor, the expenditure of public money, the making of contracts, the purchase of materials or supplies, the construction, alteration or repair of any public works or other property, or in the care, custody or management of the same, or in general in the conduct of the executive or administrative business of the city, except as herein required in providing for the appointment and removal of subordinate officers and assistants, and as may be necessary for defraying the contingent and incidental expenses of the city council or of either branch thereof."

" Section 26. The mayor shall be the chief executive officer of the city, and the executive powers of the city shall be vested in him and be exercised by him either personally or through

the several officers and boards in their respective departments, under his general supervision and control."

" Section 33. No sum appropriated for a specific purpose shall be expended for any other purpose, and no expenditure shall be made and no liability incurred by or in behalf of the city until the city council has duly voted an appropriation sufficient to meet such expenditure or liability together with all prior unpaid liabilities which are payable therefrom. . . ."

St. 1884, c. 226, referred to in the opinion, is as follows:

" Whenever the authorities empowered to locate, lay out or construct streets, ways or public parks in a city or town, shall take by purchase or otherwise any land therefor, such authorities may make an agreement in writing with the owner of such land that the city or town shall assume any betterments assessed upon the remainder of such owner's lands or any portion thereof, for such location, laying out and construction, and such agreement shall be binding on such city or town: *provided*, such owner shall, on such terms as may be agreed upon with said authorities, release to the city or town all claims for damages on account of locating, laying out and constructing such street, way or park."

*S. J. Elder*, for the petitioners.

*T. J. Boynton*, for the respondent.

BARKER, J.   The petitioners concede that incomplete negotiations for settlement of a controversy are not admissible in evidence, but contend that the evidence offered and rejected was of a complete settlement of the controversy agreed to by both parties, and which after it had been agreed upon failed only from the refusal of the respondent to fulfil it.   A view of the facts shows that such was not the case.

On September 21, 1897, the petitioners' lands were taken to widen a street, the taking being in proceedings under the betterment acts.   In these proceedings the city authorities did not act under the provisions of St. 1884, c. 226, by making a written agreement with the petitioners that the city should assume any betterments to be assessed upon their land, they releasing their claim to damages, upon terms agreed upon between themselves and the authorities acting for the city in taking the land.   On the contrary the taking was the usual one under the provisions

of law authorizing the assessment of betterments. It gave to
the petitioners a right to damages fixed at the value of their
land taken before the widening, and it also gave to the city
authorities the power to assess betterments on the land of the
petitioners which had not been taken for the widening.

The petitioners filed their petition for damages on August 31,
1898. The city authorities exercised their power of assessing
the betterments on September 18, 1899, imposing an assessment
of $4,232.04, on the petitioners' land. Before the making of
this assessment, during the period from April 25, 1899, to June
13, 1899, the petitioners made a proposal to the council and
board of aldermen to settle their claim for damages for $7,800
and an agreement to abate the betterments to be assessed upon
their property. This proposal was accepted by the council and
board of aldermen, and the agreement was passed, over the
mayor's veto, by the board of aldermen on May 8, 1899, and by
the common council on June 13, 1899. Since that time the peti-
tioners have been willing and have offered to settle according
to the agreement, but the city government has neglected and
refused to make the appropriation necessary to carry it into
effect, and matters were in this state when, upon the hearing of
this petition at the March sitting of the year 1900, the peti-
tioners offered to show their proposal and the action of the city
government upon it as evidence in support of their contention
that their damages by the taking were $12,000 or more.

By the charter of the city of Everett the power to lay out
streets is conferred upon the city council. St. 1892, c. 355, § 23.
If the votes which followed the proposal accepted by the common
council and board of aldermen on April 25, 1899, had been
passed as a part of the taking of the land, they might have con-
stituted an agreement in writing under the provisions of St. 1884,
c. 226, § 1, and so been binding upon the city. See *Atkinson* v.
*Newton,* 169 Mass. 240. This would have been so notwithstand-
ing the provisions of the city charter cited by the respondent,
with reference to the making of contracts by the city council,
making the mayor the chief executive officer of the city, and
providing that no liability shall be incurred by or in behalf of
the city until the city council has duly voted an appropriation
sufficient to meet such liability. St. 1892, c. 355, §§ 21, 26, 33.

These sections were passed *alio intuitu*, and do not limit the powers of the city council in its jurisdiction to lay out, alter or widen ways under general laws.

But the taking of the land having been made without any such written agreement, no power was conferred by St. 1884, c. 226, to make the agreement nearly two years after the taking, and simply by way of settlement of a pending petition for land damages. Whether the proposal and votes constitute as the petitioners contend a completed settlement therefore depends upon the general powers of the city council and the limitations of their powers. One such limitation which disposes of the petitioners' contention is that usually and aside from its power derived from St. 1884, c. 226, which as we have seen cannot be invoked in this case, the city council can incur no liability in behalf of the city unless the council has duly voted an appropriation sufficient to meet the liability. St. 1892, c. 355, § 33. See also § 26, and *Brackett* v. *Boston*, 157 Mass. 177. Therefore the common council and the board of aldermen had no authority to pass the votes of April 25, May 8, and June 13, 1899, and those votes and the proposal did not constitute a completed settlement, and evidence of them was rejected properly, under the ordinary rule excluding evidence of offers or attempts to compromise pending the litigation.

. The other exception is to the exclusion of evidence of the amount of the betterment assessment. If the proposal and votes had been competent, perhaps this evidence would have been necessary to the proper understanding of the whole transaction. The offer and the votes having been rightly excluded no good reason can be urged for sustaining this exception. The issue was simply the value on September 21, 1897, before the taking, of certain lands, then adjoining a street in the city of Everett. No reason can be suggested for any lack of competent evidence upon such a question of value. Neither the value of the land taken nor that of the land assessed was an element in the making of the betterment assessment. If the making of the assessment had involved a valuation either of the land taken or of that assessed or of both, such valuations would be no more valuable for the purposes of such a case as was before the jury, than valuations made in the assessment of ordinary taxes.

*Exceptions overruled.*