REAL PROPERTIES, INC. *vs.* BOARD OF APPEAL OF BOSTON (and three companion cases[1]).

Suffolk. February 9, 1940. — May 25, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, & COX, JJ.

*Board of Appeal. Boston. Zoning. Public Officer. Practice, Civil,* Exceptions: what questions open. *Certiorari. Words,* "Members," "Board."

A substitute designated in accordance with the first paragraph of St. 1907, c. 550, § 6, as amended by St. 1910, c. 631, § 1, to act in a particular case under consideration by the board of appeal of the building department of Boston is a "member" of the "board" within the third paragraph, and his assent is to be counted as one of the three assents required for a decision by the board.

A decision granting a variance of the application of the zoning law of Boston, made unanimously by four appointed members of the board of appeal of the building department and one substitute designated to act in that matter in accordance with the first paragraph of St. 1907, c. 550, § 6, as amended by St. 1910, c. 631, § 1, was "the unanimous decision of the entire membership of the board" within St. 1924, c. 488, § 19, as amended.

In the circumstances, where an exception to an order in a certiorari case quashing proceedings of a board based solely on a certain ruling of law by the trial judge was sustained because the ruling was determined by this court to be erroneous, the question, whether the order properly might be issued on another ground which was not considered by the trial judge, was left for determination in further hearings in the trial court.

FOUR PETITIONS for writs of certiorari, filed in the Supreme Judicial Court for the county of Suffolk on March 24 and March 30, 1939.

The cases were heard by *Qua,* J.

*R. H. Hopkins,* Assistant Corporation Counsel, for the respondents.

---

[1] The companion cases were by Brockton Savings Bank, Julius Kalman & others, and Price & Nisson, Inc.

*M. J. Zieman,* for the petitioners Real Properties, Inc., and others.

*H. Sesnovich,* for the petitioner Price & Nisson, Inc., submitted a brief.

FIELD, C.J.   This matter comes before us on a consolidated bill of exceptions of the members of the board of appeal of the city of Boston constituted by the building law of said city (St. 1907, c. 550, as amended), which by the zoning law of said city (St. 1924, c. 488, as amended) is authorized to act as a board of appeal under the zoning law.   St. 1924, c. 488, § 19, in the amended form set out in St. 1926, c. 350, § 1.   The bill of exceptions relates to four petitions for certiorari (see G. L. [Ter. Ed.] c. 249, § 4; St. 1924, c. 488, § 19), brought in the Supreme Judicial Court against said members of the board of appeal, for the purpose of quashing the proceedings of said board in granting a single decision varying the application of the zoning law at premises 77–91 Washington Street in Boston.   In each of these four cases the respondents filed a return to the petition purporting to set forth the entire record.   These returns were substantially identical in all four cases.

The cases were heard by a single justice of this court on the petitions and the returns of the respondents.   As appears from the bill of exceptions, the single justice in each case "ruled that the decision of the board of appeal as shown in the return was not 'the unanimous decision of the entire membership of the board,' as expressly required by St. 1924, c. 488, § 19, and the respondents duly took an exception to this ruling.   This ruling was the sole ground upon which the single justice based the order that the writs of certiorari issue to quash the record of the board, and the respondents also duly claimed exceptions to the respective orders in each of the four cases."   The single justice stated: "Any exercise by the court of the discretion against granting the writ for this cause would seem to me contrary to the declared legislative policy."

Facts material to the ruling disclosed by the returns of the respondents, which must be taken as true (*Byfield* v. *Newton,* 247 Mass. 46, 53; *Hough* v. *Contributory Retire-*

*ment Appeal Board*, 309 Mass. 534, 535), are as follows:
F. I. Sher Co. applied to the building commissioner of the
city of Boston for a permit for the use of the premises 77–91
Washington Street. The application was refused on the
ground that it would be in violation of §§ 4 and 13 of St.
1924, c. 488, as amended. Thereupon said F. I. Sher Co.
petitioned the board of appeal to vary the application of
the zoning law, St. 1924, c. 488, so as to permit the use of
the premises for the uses for which the application to the
building commissioner had been refused. The board, with
four of the five appointed members thereof sitting and a
substitute sitting in place of an absent appointed member,
voted "unanimously" to "vary the application of the Zon-
ing Act (Sections 4 and 13) in this specific case and to annul
the refusal of the Building Commissioner as set forth in
full in decision on file," with a certain proviso described in
the vote.

The question of law raised by the exceptions to the ruling
of the single justice is whether the action of the board of
appeal in varying the application of §§ 4 and 13 of St. 1924,
c. 488, as amended, was without statutory authority on the
ground that such action was not "the unanimous decision
of the entire membership of the board" as required by § 19
of the zoning law, St. 1924, c. 488. The answer to the ques-
tion depends upon the proper construction of the governing
statute.

The board of appeal that by the governing statute (St.
1924, c. 488, § 19, as amended by St. 1926, c. 350, § 1 —
a part of the zoning law of the city of Boston) is given
jurisdiction to "vary the application of this act in specific
cases" is the "board of appeal provided for in paragraph
one of section six of the" building law of the city of Boston,
St. 1907, c. 550, § 6, as amended by St. 1910, c. 631, § 1,
set out in full in a footnote.[1] Said "paragraph one" pro-

---

[1] "There shall be in said department a board to be called the board of
appeal. Said board shall consist of five members appointed by the mayor
in the following manner: — One member from two candidates, one to be
nominated by The Real Estate Exchange and Auction Board and one by the
Massachusetts Real Estate Exchange; one member from two candidates,
one to be nominated by the Boston Society of Architects and one by the

vides: "There shall be in said department [the building department of the city of Boston] a board to be called the board of appeal. Said board shall consist of five members appointed by the mayor in the following manner: . . . [Here follows provision for nominations of candidates for four positions on the board by various organizations and appointment by the mayor, for the appointment of one member by the mayor without such nomination and for confirmation of appointments by what is now the city council, for original appointments for varying terms and then for the term of five years, for the filling of vacancies in the same manner, and for compensation.] No member shall act in any case in which he is interested, and in case any member is so disqualified, or is absent from illness or other cause, the remaining members shall designate a substitute." And the third paragraph of said § 6 provides: "Every decision of the board shall be in writing and shall require the assent of at least three members."

1. It is provided by G. L. (Ter. Ed.) c. 4, § 6, that in construing statutes, unless a construction would thereby be involved "inconsistent with the manifest intent of the lawmaking body or repugnant to the context of the same statute, . . . Fifth, Words purporting to give a joint authority to, or to direct any act by, three or more public officers or other persons shall be construed as giving such authority to, or directing such act by, a majority of such

---

Boston Society of Civil Engineers; one member from two candidates, one to be nominated by the Master Builders Association and one by the Contractors and Builders Association; one member from two candidates to be nominated by the Building Trades Council of the Boston Central Labor Union; and one member selected by the mayor. These appointments shall be subject to confirmation by the board of aldermen. The appointments first made shall be for the terms of one, two, three, four, and five years, respectively, so that the term of one member shall expire each year. All subsequent appointments shall be for the term of five years. Vacancies shall be filled in the same manner in which original appointments are made. Each member of said board shall be paid ten dollars per day for actual service but not more than one thousand dollars in any one year. No member shall act in any case in which he is interested, and in case any member is so disqualified, or is absent from illness or other cause, the remaining members shall designate a substitute.

"All the members of said board shall be residents of or engaged in business in Boston.

"Every decision of the board shall be in writing and shall require the assent of at least three members."

officers or persons." This means that such officers or persons "should act jointly, and that all should have an opportunity to participate in their action," at least in the absence of extraordinary circumstances (*Damon* v. *Selectmen of Framingham*, 195 Mass. 72, 78–79; *Pettengell* v. *Alcoholic Beverages Control Commission*, 295 Mass. 473, 477), but when all have had such an opportunity the officers or persons may act by majority. *Williams* v. *School District No. 1 in Lunenburg*, 21 Pick. 75, 82. *Reynolds* v. *New Salem*, 6 Met. 340, 343. *Plymouth* v. *County Commissioners*, 16 Gray, 341, 343. *Mayor & Aldermen of Worcester* v. *Railroad Commissioners*, 113 Mass. 161, 174. *Damon* v. *Selectmen of Framingham*, 195 Mass. 72, 78. *Cooke* v. *Scituate*, 201 Mass. 107. Furthermore, in *Sargent* v. *Webster*, 13 Met. 497, 504, where the court had under consideration action by a board of directors of a corporation, it was said that in "ordinary cases, when there is no other express provision, a majority of the whole number of an aggregate body, who may act together, constitute a quorum, and a majority of those present decide any question upon which they can act." And in the case of *Codman* v. *Crocker*, 203 Mass. 146, 154, involving action of the Boston transit commission, a board consisting of five members, where the bill of complaint alleged that only three of the members were present at the time the action in question was taken and only two of them voted in favor of such action, the court said: "Such a board may act by a majority of its members, if all have had notice and an opportunity to act, and the determination of a majority of a quorum under such circumstances is binding." Moreover, it was said by the court in *Merrill* v. *Lowell*, 236 Mass. 463, 467, that in "the absence of statutory restriction the general rule is that a majority of a council or board is a quorum and a majority of the quorum can act." See also *Damon* v. *Granby*, 2 Pick. 345, 353; *Day* v. *Green*, 4 Cush. 433, 439. To what extent the principle that a majority of a quorum consisting of only a majority of a board may act is applicable to cases within the scope of G. L. (Ter. Ed.) c. 4, § 6, Fifth, need not be considered, since in the present case the subject is covered

by specific statutory provisions. But the state of the law, common and statutory, relating to the subject generally, furnishes a background for construing these specific statutory provisions.

2. Statute 1907, c. 550, § 6, as amended by St. 1910, c. 631, § 1, provides for a board of appeal of five persons. The obvious purpose of other provisions of this section is to preclude the application of the principle that a "majority of a . . . board is a quorum and a majority of the quorum can act." The mandatory statutory requirement that every "decision of the board . . . shall require the assent of at least three members" precludes decision by a majority of a quorum that consists of less than five members. This requirement, however, of itself, does not fix the quorum of the board for the purpose of making decisions at more than three members — the ordinary quorum of a board of five members. But the further provision of the section, "No member shall act in any case in which he is interested, and in case any member is so disqualified, or is absent from illness or other cause, the remaining members shall designate a substitute," shows a legislative intention that a quorum of the board for the purpose of making decisions shall consist of five persons, either appointed members or substitutes duly designated as such. The obvious purpose of this provision is to insure that five persons shall participate in every case before the board, but that the disqualification or absence of an appointed member shall not render the board incapable of hearing and considering a case within its jurisdiction. The natural construction of the provision, therefore, is that, when a tribunal of five persons has been duly constituted for a particular case, a substitute designated in the manner prescribed by the statute shall be, in truth, a "substitute" for the appointed member for whom he is substituted with all the powers with respect to the particular case that the appointed member, if present and not disqualified, would have had, including the power to vote with the right to have his vote counted. It would require clear statutory language to produce the result that a "substitute" could be counted to constitute

a quorum to hear and consider a case before the board, but that such "substitute" should not have the power to vote thereon. And the power to vote implies the power to vote affirmatively or negatively and to have the vote counted as cast. A construction of the statutory provision that "Every decision of the board . . . shall require the assent of at least three members," as requiring the assent of at least three appointed members of the board, would to a large extent nullify the statutory provision for designation of a substitute. A "substitute" without the power to vote effectively would be a meager substitute for an appointed member. The two statutory provisions, if reasonably possible, must be read together so as to make the section of the statute containing them a consistent and harmonious whole. *DeBlois* v. *Commissioner of Corporations & Taxation*, 276 Mass. 437, 438. And nothing in the statute precludes such a construction thereof.

The principal argument for construing the section as requiring the assent of three appointed "members" of the board for every "decision of the board" is based upon the use of the word "members." It is true that in the earlier part of the section the word "members" refers to appointed members. It is provided that the "board to be called the board of appeal" "shall consist of five members appointed by the mayor." But this provision is followed in the section by the provision for the designation of substitutes, which, in turn, is followed by the provision requiring the "assent of at least three members" for every "decision of the board." It seems to us to be the natural meaning of the language that the word "board" as here used includes a board constituted in accordance with the preceding provision of the section relating to substitutes for the purpose of hearing and considering a particular case, that the "board" so constituted is to make the "decision" in the particular case, and that for this purpose a duly designated "substitute" is a "member" of the "board" or at least takes the place, in the ordinary meaning of substitute (see *Toledo Edison Co.* v. *McMaken*, 103 Fed. [2d] 72, 75), of the "member" for whom he is substituted, so that his

"assent" is to be regarded as an "assent" of one of "at least three members" required for a "decision of the board." If the Legislature had intended to require the assent of at least three appointed members in disregard of the provision for designation of substitutes, it could readily have done so by unambiguous language. Neither the obvious purpose of the section nor the words thereof, however, require a disregard of the provision for the designation of substitutes, but the construction here given to the section makes it a consistent and harmonious whole.

The construction here given to St. 1907, c. 550, § 6, as amended, receives some support from the following § 7 which provides: "The board may vary the provisions of this act in specific cases which appear to them not to have been contemplated by this act although covered by it, or in cases where manifest injustice is done, provided that the decision of the board in such a case shall be unanimous and shall not conflict with the spirit of any provision of this act." The "board" here referred to is the "board" referred to in the previous section. There is, however, no provision in the section, as in the previous section, that "No member shall act in any case in which he is interested," yet it can scarcely be doubted that the Legislature intended that a member of the board should not act under this section in such a case — a principle of rather general application even where not expressly stated. See *Beauregard* v. *Dailey*, 294 Mass. 315, 324–325. It is a natural interpretation of this section that the provisions of the preceding section relating to disqualification and to designation of a substitute were intended to apply to the "board" acting under this section, and that the "unanimous" "decision of the board" is such a decision of a "board" constituted for a particular case in accordance with the provisions of the preceding section. In view of the obvious purpose of the section to provide a stricter requirement for action under this section than under the preceding section, this construction of the section seems more reasonable than any conceivably possible alternative such as that, under said § 7, if an appointed member was disqualified for interest, (a) such member should partici-

pate in the decision though disqualified, (b) such member should not participate in the decision, but, in that event, a decision by less than five members should constitute a unanimous decision, or (c) the board should be unable to make a decision, so long as the member in question remained an appointed member of the board and his disqualification continued. A construction of § 7 requiring a substitute to participate in a unanimous decision would be stricter than a construction of said section either as permitting a disqualified member so to participate or as permitting a unanimous decision by less than five members, and would not derogate from the obvious purpose of the section in this respect. And it is hardly to be thought that the Legislature intended that the disqualification of an appointed member should prevent the board from acting under § 7, when by a reasonable construction of the section the provision for the designation of substitutes in § 6 could be regarded as incorporated in § 7, with the result that the "board" referred to therein might, for the purpose of a particular case, be a board constituted as provided by § 6 including the provision for the designation of substitutes. The apparent distinction between action under § 6 and action under § 7 is that under the former section the assent of "three members" is sufficient for a decision, while under the latter section the assent of five members is required. If the assent of a substitute is to be counted as an assent of one of five members under § 7, it would naturally follow that the assent of a substitute is to be counted as an assent of one of three members under § 6, on the theory that in each instance a duly designated substitute is treated as a "member" of the "board" for the purpose of the particular case.

3. The provisions of the zoning law of the city of Boston in question in the present cases (St. 1924, c. 488, § 19, as amended in respects not here material) are to be construed in the light of the construction here given to St. 1907, c. 550, § 6, as amended by St. 1910, c. 631, § 1. The "board of appeal" that by said St. 1924, c. 488, § 19, as amended, is given jurisdiction of the matter here in question is the

"board of appeal provided for in paragraph one" of said § 6. It is to be observed that it is the board of appeal "provided for" in that paragraph and not the board of appeal to be "appointed" thereunder. And it is to be observed also that the reference is to "paragraph one" of the section and not to the section as a whole. The provision for designation of substitutes is contained in that paragraph of the section. And that provision, as has already been pointed out in construing the section, is naturally to be construed as providing for a board of appeal for a particular case that may include one or more substitutes when, by reason of disqualification or absence from illness or other cause, all five of the appointed members cannot participate in the decision of the particular case. In view of the specific reference in said § 19 to "paragraph one" of said § 6 and of the absence from § 19 of any provision with respect to a member disqualified by reason of interest in a case, the natural interpretation of said § 19 is that the provision in "paragraph one" of said § 6 with respect to disqualification or absence and designation of substitutes is applicable to the board of appeal when acting under authority of said § 19, and, consequently, that the "board of appeal" when acting under said § 19 may be a board of appeal constituted for the particular case consisting of appointed members and a substitute or substitutes duly designated as such in accordance with the provisions of said § 6.

Statute 1924, c. 488, § 19, as amended, by limiting its reference to said § 6 as amended, to "paragraph one" thereof, fails to include the provision in the third paragraph thereof that every "decision of the board . . . shall require the assent of at least three members," but instead said § 19 provides expressly, with respect to variances of the application of the zoning law that the board of appeal by said § 19 is authorized to grant, that "No such variance shall be authorized except by the unanimous decision of the entire membership of the board." This difference is in accordance with the obvious legislative intention to prescribe a stricter rule for granting variances from the appli-

cation of the zoning law than for decisions upon ordinary appeals under the building law within the scope of St. 1907, c. 550, § 6, as amended. Decided cases have recognized that such variances are to be made sparingly. *Norcross* v. *Board of Appeal of Boston,* 255 Mass. 177, 185. *Coleman* v. *Board of Appeal of Boston,* 281 Mass. 112, 116. But, as has already been pointed out in respect to St. 1907, c. 550, § 7, the designation of a substitute would naturally tend to stricter enforcement than would permitting a person disqualified by reason of interest in the case to participate in the decision thereof, or permitting a decision by less than five members by construing the provision, "the entire membership of the board," as meaning such entire membership so far as qualified to act. A construction of said § 19 that would render the board of appeal incapable of making a decision in a particular case, if an appointed member of the board was disqualified from participating therein, is to be avoided unless required by express language or necessary implication. Such a construction is not so required in view of the incorporation of a provision for disqualification or absence and designation of substitutes in "paragraph one" of § 6 as amended, in the description of the board of appeal that is to have jurisdiction. It is a natural inference that the Legislature made no other provision with respect to disqualification of a member for the reason that such a provision — with a provision with respect to absence — was so incorporated by reference to "paragraph one" of said § 6. Obviously express provision relating to disqualification was not omitted because the subject was not in the mind of the Legislature, for when it passed the zoning law of Boston (St. 1924, c. 488) and provided in § 20 thereof for a board of zoning adjustment, empowered to "change the boundaries of districts by changing the zoning map," consisting of twelve members appointed in a manner similar to the manner of appointing members of the board of appeal, it provided expressly that "No member shall act in any case in which he is personally interested either directly or indirectly," and that "No such change shall be made except by the decision of not less

than four fifths of the members of the board, excepting only any member or members not qualified to act."

Some support for the construction here given to the controlling provision of St. 1924, c. 488, § 19, as amended, is to be found in the further provision of the section that the "board shall cause to be made a detailed record of all its proceedings, which record shall set forth the reasons for its decisions, the vote of each member participating therein, and the absence of a member or his failure to vote." This provision is adapted to requiring the disclosure of the fact that an appointed member did not participate in a decision, the reasons therefor, and the consequent participation in the decision of a substitute. It is not unreasonable to infer that the disclosure of these facts was an important purpose of requiring a record of the proceedings of the board containing the specified details with respect to participation and absence of members.

4. In view of the construction here given to St. 1924, c. 488, § 19, as amended, the ruling of the single justice that the decision of the board of appeal as shown in the returns was not "the unanimous decision of the entire membership of the board" was erroneous. The returns show that the decision of the board in the present case was the "unanimous" decision of four appointed members of the board and one substitute acting by reason of absence of one appointed member, constituting the "entire membership of the board" for this particular case.

5. The ruling that we hold to be erroneous was the sole ground upon which the single justice based his orders that the record of the board be quashed. The orders cannot be sustained upon this ground. However, it is argued by counsel for some of the petitioners that the orders should be sustained on an independent ground. But this independent ground was not passed upon by the single justice and has not been argued by other counsel. And the record does not show how the single justice would have exercised his discretion with respect to ordering the proceedings quashed if the cases were to be decided upon any ground other than that upon which he based his decision. The

discretion to be exercised is that of the single justice, subject only to review for error of law. *Whitney* v. *Judge of the District Court of Northern Berkshire,* 271 Mass. 448, 459. *Daley* v. *District Court of Western Hampden,* 304 Mass. 86, 98. See also *Long* v. *George,* 296 Mass. 574, 578–579. We cannot rightly anticipate how that discretion will be exercised and pass in advance upon the propriety of a possible exercise thereof. In these circumstances the exceptions must be sustained by reason of the error in the ruling, without consideration of the question whether on some other ground orders to quash should issue — a matter that will be open in further proceedings before a single justice. In each case, the entry must be

*Exceptions sustained.*